**SCANNED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

U.S. DISTRICT COURT
DISTRICT OF MAINE
PORTLAND
RECEIVED & FILED

2017 NOV -2 A II: 35

DEPUTY CLERK

In Re: Trial Witness Subpoenas:

Served in UNITED STATES v.

MST MINERALIEN SCHIFFAHRT
et al.,

Defendants.

Case No. 2:17-MC-269-NT

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### EMERGENCY MOTION TO QUASH SUBPOENAS

NOW COME Peter Demcak, Jaroslav Hornof, Damir Kordic and Lukas Zak, each a former crewman onboard the M/V MARGUERITA (the "Previously Arrested Witnesses") and move this Honorable Court to quash the subpoenas served on them requiring them to appear for trial in this matter on November 6, 2017 and to order the government not to serve further process on them without prior notice to the undersigned counsel and approval by this Court.

In support of this motion the Previously Arrested Witnesses show as follows:

1.     In response to an inquiry from the undersigned counsel, the government conceded that the trial has been continued and is likely to be continued on additional occasions.

2.     The government contends, however that the witnesses remain under subpoena and are obligated to attend trial whenever it is reached.  The contention creates an unfair hardship for the witnesses because (a) they live in Eastern Europe, (b) they would not lightly disregard an obligation under a U.S. subpoena because their valid U.S. visas are vital to their livelihoods, (c) it is also vital to their livelihoods that they be at liberty to sign contracts to return to sea; those contracts typically last from four to eight months, and the Previously Arrested Witnesses cannot reasonably sign such contracts if they are under an obligation to leave vessels at sea to appear in the United States as trial witnesses, (d) the government already has the trial testimony of the

Previously Arrested Witnesses, (e) as explained below the government secured that testimony at the end of a long ordeal by which, the Previously Arrested Witnesses respectfully contend, government employees conspired to deprive the witnesses of their rights, (f) the government served the trial subpoenas the day the witnesses were allowed, by order of this Court, to leave the country after giving their trial testimony depositions, and (g) the witnesses should not be at risk of arrest for violating an open ended subpoena whenever in the future they visit a U.S. port.

3.      The government's prior abuses of the rights of the Previously Arrested Witnesses is described below to help place the witnesses' circumstance in context.

4.      The illegal detention of the Previously Arrested Witnesses had several phases, with each new phase apparently designed to moot the Previously Arrested Witnesses' efforts to gain their liberty.

5.      On July 8, employees of the Department of Justice, the United States Coast Guard and the Customs and Border Protection engaged in an apparently coordinated effort to revoke without legal authority or any due process the valid shore passes known as D-1 and D-2 Seaman Visas that Customs and Border Protection employees had issued to the witnesses on July 7. Those visas were revoked that day and the government ordered the witnesses and the entire crew of the M/V MARGUERITA detained onboard the vessel.

6.      Although illegal as to all members of the vessel's crew, the government's action was particularly unfair to Mr. Zak and two other crewmen who were at the end of their crewing contracts. The government had issued the three of them valid shore passes (known as D-2 Visas) that expressly authorized each to fly home to Eastern Europe on July 8.

7.      By federal statute, 8 U.S.C. 1282(b) immigration officers are authorized to revoke D-1 and D-2 crewmen visas upon determining that the crewmen either (a) are not bona fide crewmen or (b) do not intend to depart the United States onboard the vessel. The statute and its

legislative history make clear that those limited means of extra-judicial revocation are authorized to prevent illegal entry into the United States. The government is not authorized to simply hold foreign nationals who entered legally because doing so furthers its effort to leverage large fines from the crewmen's employer, which was the government's goal in this instance.

8.      Accordingly, on July 14, 2017, Mr. Zak filed a petition for a writ of habeas corpus to permit his return home. This Honorable Court attempted to arrange a conference on that petition that afternoon, but the Department of Justice employees involved in the effort to detain Mr. Zak avoided the Court's communication.

9.      On July 16 the movants and five other crewmembers were forced off the vessel and involuntarily paroled into the United States and their passports were illegally confiscated. At the time the Coast Guard, the office of Custom and Border Protection and the Department of Justice all knew that Mr. Zak was represented by the undersigned attorney and that a petition was pending for his liberty, but officials from each agency decided in a coordinated plan to deprive Mr. Zak of the assistance of his attorney. Without the assistance of counsel, Mr. Zak and the other Previously Arrested Witnesses were thus "paroled" into this foreign country without their consent.

10.     As part of the plan to detain the crewmembers without due process, the government had coerced their employer, one of the defendants in this matter, to agree to leave the witnesses behind in this foreign country as part of the "security" for the government's agreement to release the M/V MARGUERITA, which the government had detained. The government detained the vessel during its first port call in the United States after the vessel's owner and operator had disclosed to the Coast Guard and the Department of Justice that a crewman, Mr. Hornof, had reported and documented that a former chief engineer on the vessel had improperly discharged bilge waste in international waters. Since the vessel sails under the

3

Liberian Flag, the discharges violated Liberian law, but not U.S. law, but the government's plan was to charge the vessel's owner and operator with previously possessing inaccurate records concerning the handling of bilge waste, essentially usurping traditional flag state jurisdiction over the admitted events.

11.     The Previously Arrested Witnesses have cooperated fully with investigations by the vessel's owners and managers, its classification society, its flag state (Liberia) and the United States. Only the United States ever sought to restrict their liberty as part of those investigations.

12.     In an effort to moot Mr. Zak's pending petition for his liberty, on July 17, 2017, the government sought and obtained an ex parte warrant for Mr. Zak's arrest as a material witness is a supposed grand jury investigation.

13.     Each of the Previously Arrested Witnesses in turn filed motions or petitions for his freedom. Mr. Hornof, for example, moved for an order allowing him to return home because the mother of his pregnant wife died on July 30, 2017. He felt it was important to comfort his wife, but assured the government he would continue to cooperate, including returning for any needed testimony or giving a deposition at the U.S. embassy in Prague, where he lives; and while his motion was pending he appeared in response to a subpoena to testify before the grand jury;

14.     Because the government was more interested in detaining him than securing his testimony, however, the government told Mr. Hornof when he appeared to testify that it was *postponing* his testimony, falsely claiming that the grand jury simply did not have time to hear from him. That same afternoon, the government sought and obtained an ex parte warrant for Mr. Hornof's arrest as a material witness, falsely claiming that a subpoena would be insufficient to produce his appearance.

15.     After all of the witnesses had been arrested and had testified before the grand jury, this Court, over the government's objection, ordered the government to take the witnesses' trial testimony and allow them to leave the country.

16.     Each of the witnesses appeared, testified and was cross examined by counsel for the defendants and prepared to leave the country believing their ordeals were finally over.

17.     However, on September 14, the day of their scheduled flights home, the government served them with subpoenas to return to this country on November 6 and testify yet again in the trial of this matter.

18.     The Previously Arrested Witnesses moved to quash the subpoenas orally later that day; on behalf of the Court, Magistrate Judge Rich denied the motion without prejudice, noting that there was really no chance the matter would be reached for trial in November in any event, which he observed would likely moot the matter.

19.     When the undersigned counsel's review of the docket revealed that the matter had been continued, he requested that the government acknowledge that the Previously Arrested Witnesses were no longer under subpoena and were free to sign seaman's contracts and resume their ordinary lives.

20.     The government insists, however, that the witnesses remain under subpoena and that they are obligated to return to this country as a result of those subpoenas whenever the case is reached for trial.

21.     As a result, the Previously Arrested Witnesses are effectively precluded from accepting employment. Moreover, especially in light of the ordeal though which this country has placed them, they are concerned that if they do sign seamen's contracts and, as a result, fail to appear whenever the case is tried, they might be arrested on their next arrival in a U.S. port.

22.     For these reasons, the Previously Arrested Witnesses deserve to know that they are not obligated to appear for a trial at some unspecified future time.

23.     In accordance with Federal Rule of Criminal Procedure 17 a subpoena must state the "time" at which the witness is required to appear.  The rule does not authorize the government to name one "time" and then contend that the witness remains under subpoena indefinitely until the proceeding actually takes place.

24.     Rule 17(c)(2) authorizes the Court to quash a subpoena "if compliance would be unreasonable and oppressive."

25.     Given all of the circumstance described above, the government's contention that its subpoena is effective indefinitely is "unreasonable and oppressive."

26.     The witnesses are also concerned that if they arrive in some United States port as crewmen on a vessel they will be served with additional process in his matter.  That should not happen – and would be unreasonable and oppressive – given the history described above, the havoc that would result and since the government already has their testimony.

WHEREFORE, Peter Demcak, Jaroslav Hornof, Damir Kordic and Lukas Zak respectfully ask that this Honorable Court quash the subpoenas served on them, declare that they are not under subpoena and order the government to serve no further process on them without a prior order of this Court after notice to the undersigned counsel.

Respectfully submitted this 2nd day of November in the Year of Our Lord 2017.

Edward S. MacColl BRN 2658
Attorney for Peter Demcak, Jaroslav Hornof,
Damir Kordic and Lukas Zak

THOMPSON, MACCOLL & BASS, LLC, P.A.
Fifteen Monument Square , 6th Floor
P.O. Box 447
Portland, ME  04112-0447
(207)  774-7600

## CERTIFICATE OF SERVICE

I certify that on November 2, 2017, I duly served on the United States and on the defendants the forgoing filing by providing a copy via electronic mail and the USPS, as follows:

Jonathan R. Chapman, AUSA
United States Attorney's Office
100 Middle Street
Portland, ME 04101
*jon.chapman@usdoj.gov*

and by forwarding images of the filing to the following additional government counsel:
John Cashman, DOJ - *John.Cashman@usdoj.gov*
Shane Waller, DOJ - *Shane.Waller@usdoj.gov*

and on the defendants by hand delivering a copy to the office of attorney Peter Rodway and forwarding images of the filing to counsel for the defendants at the following email addresses:

George M. Chalos – *gmc@chaloslaw.com*
Peter Rodway – *rodlaw@maine.rr.com*

Edward S. MacColl