UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

In Re: PETER DEMCAK, et al

Case No. 2:17-mc-00269-NT

<u>R<small>EPLY TO</small> R<small>ESPONSE TO</small> E<small>MERGENCY</small> M<small>OTION TO</small> Q<small>UASH</small> S<small>UBPOENAS</small></u>

Employing extraordinary tactics, including illegal detention, wrongful seizure of passports, and ex parte material witness arrest warrants secured with false affidavits, the government held Peter Demcak and Lukas Zak (both Slovakian citizens), Jaroslav Hornof (a Czech), and Damir Kordic (from Croatia) for over two months and secured grand jury and trial deposition testimony from each. On September 14, the day the witnesses were preparing to leave the country (pursuant to orders entered over the government's objection), the government served subpoenas requiring the witnesses to return for live trial testimony on November 6. That same day, however, the government agreed with the Court that the subpoenas would no longer be "valid" following the inevitable trial continuance. Following that assurance, Magistrate Judge Rich denied the witnesses' oral motions to quash the subpoenas "without prejudice" to their right to file written motions should the government contend the witnesses have a continuing obligation to return and testify.

In opposing the witnesses' written motion to quash the subpoenas, the government now contends, without supporting precedent, (a) that a U.S. subpoena served here creates a continuing duty on a foreign national to return to the States to testify (again) whenever the case is reached, "if asked," (b) that challenges to government subpoenas are premature until the government either "seeks contempt" or at least "requests" compliance and (c) the Court has no discretion to

grant subpoenaed witnesses relief even if their trial deposition testimony was already taken following prolonged detention.

The witnesses hope the government is primarily posturing. Footnote 3 of the government's response may suggest the government expects the Court to grant the requested relief – and that the government simply fears the defendants would later contend express acquiescence "caused" witness unavailability and jeopardized deposition admissibility. Whatever the government's motives, its novel, meritless theories should be rejected and all aspects of the pending motion granted.

The witnesses understand, moreover, that the defendants do not oppose – and they have not objected to – the motion.

### SETTING THE RECORD STRAIGHT

Misleading and false statements in the government's response include the following:

1.     The government mistakenly asserts at page 1 that it "request[ed]" the witnesses to remain in the United States. Instead, it illegally revoked their D-1 and D-2 visas and formally "detained" them onboard the M/V MARGERITA for over a week. Some of the relevant detention notices are included as **EXHIBIT A**. The government then entered into an illegal Agreement on Security, a copy of which is attached as **EXHIBIT B**, with the vessel's manager *requiring* that the witnesses "shall remain" in the United States and prohibiting the vessel from leaving with them. Page 8 of the (illegal) Agreement on Security provides that the witnesses will be "asked" to turn their passports over to the defendants, who were to give the government notice if the witnesses requested their own passports back. Instead, as part of an extraordinary process by which the government "paroled" the witnesses into the United States involuntarily while denying them assistance of counsel, the government summarily confiscated their passports.

2. When Magistrate Rich expressly denied the witnesses' oral motion to quash the trial subpoenas served September 14, 2017, he expressly did so "without prejudice" as described above; in so ruling the Court noted that "Mr. MacColl and Mr. Waller appear to agree" that the subpoenas would no longer "be valid" were the trial continued. The witnesses have ordered a transcript of the ruling.

3. At the same time, the Court denied the government's motion to establish a procedure whereby the witnesses would remain under subpoena were the trial continued. An image of the government's motion and proposed order is attached as **EXHIBIT C**.

4. At page 5, the response mistakenly states that "hardship to the [witnesses] is speculative." Instead, not knowing whether they are required to travel to the United States at some unspecified time is highly disruptive since (a) the witnesses live in Eastern Europe, (b) they earn their livelihoods by signing and serving 4 to 10-month seafaring contracts they cannot in good faith sign without knowing whether they are legally obligated to return here and (c) they cannot jeopardize their U.S. visas by potentially violating an ambiguous subpoena since their livelihoods also depend on maintaining those visas.

5. Page 5 of the response states that under the Agreement on Security the defendants must pay the costs of the witnesses' trial travel. No such provision is cited, and none exists.

### DISCUSSION

### I. *The Motion is Ripe*

The government cites no case holding that a motion to quash a subpoena actually served is premature. *Stern v. U.S. District Court*, 214 F.3d 4 (1st Cir. 2000), on which the government relies, is not remotely on point. It held that a U.S. Attorney's suit challenging a local rule restricting the government's subpoenaing of defense counsel *was* ripe even though the rule had not been invoked. And cases cited by the government make clear that it is *improper* for a

3

subpoenaed witness to wait for a contempt proceeding before challenging a subpoena. *Shulton, Inc. v. Optel Corp.*, 126 F.R.D. 80 (S. D. Fla. 1989), cited in footnote 4 of the response, held that a witness who failed to appear for a continued deposition *could* be "*found in contempt for disregarding the subpoena or failing to file a timely motion to quash*" [*emphasis* supplied]. Indeed, Federal Rule of Criminal Procedure Rule 17(c)(2) sets forth the requirement for "prompt" challenges to subpoenas for production of documents. Cases cited by the government expressly extend that requirement to challenges to testimonial subpoenas. For example, the government cites *In re Grand Jury Witness*, 835 F.2d 437, 441 (2nd Cir. 1987), for the proposition that "for over half a century it has been established law that *unless a subpoena is vacated on proper application*, the person whom it directs to appear must 'respond to the subpoena and [must] remain in attendance until excused by the court or by the Government's representatives." [*Emphasis* supplied.]

  The government's suggestion that the witnesses should simply sign long-term seafaring contracts that would make subpoena compliance impossible against the hope they would not be "asked" to testify or found in contempt is untenable and unprecedented. The dilemma our overbearing government proposes for these conscientious seafarers is real, ripe and wrong.

  II. **The Government Is Estopped from Contending that Subpoenas Served on These Foreign Nationals Remain Effective After November 6; In Any Event, the Subpoenas Are No Longer Effective Under the Circumstances**

  Since the government expressly agreed on September 14 that its subpoenas would become invalid after November 6, it is estopped from contending the witnesses remain under subpoena. Even were the government not so estopped, the Court should hold that the subpoenas served on these witnesses to appear on November 6 do not have indefinite effect. The government asked the Court to establish a procedure whereby the witnesses would have to

4

remain available after November 6 even though the government already has their trial testimony. The Court rejected that approach.

The government relies on *Blackmer v. United States*, 284 U.S. 421 (1932), for the proposition that a witness under subpoena must wait for the trial to start. But *Blackmer* involved a one week continuance and a local witness whose trial testimony had not already been secured. After giving their trial testimony under Rule 15 and 18 U.S.C. §3144, these witnesses were authorized to and did return to their overseas homes. It was precisely because those homes are beyond this country's subpoena power that the government had been allowed (after illegally detaining them) to arrest the witnesses and secure their trial testimony by deposition. No case and no logical principal suggests the government's subpoenas do or should impose on these foreigners a continuing duty to return whenever the case is reached to repeat that testimony.

### III. *The Court Has Discretion to Quash These Subpoenas and Should Do So*

The cases cited by the government suggesting subpoenas must issue if a witness has relevant testimony all involved a *defendant's* Sixth Amendment right to compulsory process and witnesses whose trial testimony had *not* been preserved. The government has cited no case that it has the absolute right to compel a witness to return for trial, let alone a foreign witness, whose trial testimony has been preserved. The Court's discretion and authority to protect material witnesses who have been arrested, deposed and "discharged" from ongoing burden is inherent and explicit under Federal Rule of Criminal Procedure 15(a)(2) and 18 U.S.C. § 3144.

### IV. *The Witnesses Have No Relevant Testimony*

The government argues the witnesses' testimony would be relevant because they "either participated in or [have] knowledge of overboard discharges of oil from the M/V MARGEURITA." But the defendants are not charged with any discharge in violation of U.S. law. Moreover, Mssrs. Demcak and Hornof signed onto the vessel *after* the last of the port calls

referenced in Counts one through eight. They can offer no non-hearsay testimony about any prior discharge.

More fundamentally, none of the witnesses have *any* knowledge of *any* crime against the United States. They do not know of *any* discharge in U.S. waters, *any* false record concerning events occurring in U.S. waters, or *any* false statement or record made or presented to *any* U.S. official.

The witnesses understand the government's theory in Counts one through eight to be that the Act to Prevent Pollution at Sea [APPS] and associated regulations make it a crime against the U.S. for certain foreigners merely to possess in U.S. waters oil record books that are incomplete or inaccurate concerning events that occurred *outside* the United States – even if the record is never presented to or seen by a U.S. official. The theory is inconsistent with the rule of lenity and the canon of extraterritorality. The latter is a "canon of statutory construction [establishing that] absent clearly expressed intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty*, 136 S. Ct. 2090 (2016), *citing Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010). The government's theory appears to be that the regulatory requirement that certain foreign ships "maintain an oil record book" was intended to give the government criminal jurisdiction over entries that were or could have been made *outside* the United States concerning events that did *not* happen here. But APPS expressly provides that it and the regulations apply to foreign ships only "while in the navigable waters of the United States." 33 U.S.C. §1902.

The indictment, moreover, misstates the key regulatory provisions, each of which is consistent with the traditional limit on U.S. jurisdiction to domestic events. For example, Indictment paragraph 6 states that 33 CFR 151.25 requires oil record book entries for various actions. But section 151.09 expressly states that section 151.25, too, applies to foreign ships

only "while in the navigable waters of the United States." None of the cited regulations (and none of which counsel is aware) require a foreign ship to make *any* oil record book entry concerning events occurring *outside* the United States. Similarly, Indictment paragraph 6 states that "the Oil Record Book must be maintained aboard the vessel for not less than three years," citing 33 CFR §151.25(k). Subsection (k), however, provides in full: "The Oil Record Book ***for a U.S. ship*** shall be maintained on board for not less than three years." [***Emphasis*** supplied.] Contrary to what the grand jury was told, there is no U.S. requirement for how long a foreign ship must retain an oil record book – even concerning events that did occur here.

Far from overcoming the presumption of only domestic applicability, APPS and MARPOL (the treaty it implements) make clear Congress intended the government to refer suspected high seas pollution from foreign ships to the vessel's flag state. The government's prescribed remedy in the event of lax flag-state enforcement is arbitration with the flag state before the International Maritime Organization.

Count nine appears to charge making false entries while actually in various U.S. ports. If that is the count's intended meaning, the witnesses can offer no supporting evidence. They have *no knowledge or information* about *any* inaccurate ORB entry being made here.

In reality, these witnesses continue to be leverage in a sad scheme by which government officials seek favorable press and large fines for events over which they have no proper jurisdiction. The official misconduct is particularly unfortunate in this instance since (a) Mr. Hornof discovered, reported and put an end to the discharges (all of which occurred outside the United States), (b) the witnesses have cooperated fully, and (c) the defendants themselves voluntarily disclosed the events long before the vessel arrived in Portland, Maine on July 7.

***Respectfully submitted*** this 11th day of November in the Year of Our Lord 2017, the 99th anniversary of the armistice ending a brutal war fought in the witnesses' homelands.

/s/ Edward S. MacColl
Edward S. MacColl BRN 2658
Attorney for Peter Demcak, Jaroslav Hornof,
Damir Kordic and Lukas Zak

THOMPSON, MACCOLL & BASS, LLC, P.A.
Fifteen Monument Square, 4th Floor
P.O. Box 447
Portland, ME  04112-0447
(207)  774-7600


## CERTIFICATE OF SERVICE

I certify that on November 11, 2017, I duly served the United States and the defendants with the forgoing filing by filing it with the Court's ECF system and also providing images by electronic mail, as follows:

Jonathan R. Chapman, AUSA -- *jon.chapman@usdoj.gov*
John Cashman, DOJ - *John.Cashman@usdoj.gov*
Shane Waller, DOJ - *Shane.Waller@usdoj.gov*

George M. Chalos – *gmc@chaloslaw.com*
Peter Rodway – *rodlaw@maine.rr.com*

/s/ Edward S. MacColl
Edward S. MacColl

8