## AGREEMENT ON SECURITY

## RECITALS

A. Reederei MS Marguerita Gmbh & Co. Geschlossene Investment-KG ("Owner"), a German-domiciled company with offices at Am Ruttmann Kai 1, 92253 Schnaittenbach, Germany, was at all relevant times the registered owner of the M/V MARGUERITA (IMO # 9717515) ("the Vessel").

B. MST Mineralien Schiffahrt Spedition und Transport GmbH ("Operator"), a German-domiciled company with offices at Am Ruttmann Kai 1, 92253 Schnaittenbach, Germany, was at all relevant times the operator of the Vessel under applicable United States law.

C. The United States of America ("United States") asserts that the Vessel is subject to the MARPOL Protocol 73/78 and the Act to Prevent Pollution from Ships ("APPS"); that the Vessel violated MARPOL Protocol 73/78, APPS, 33 USC § 1908 (a), and the regulations thereunder (collectively, the "Alleged Violations"); and that a U.S. District Court may assess criminal penalties against the Vessel *in rem* or its Owner and/or Operator *in personam*.

D. The United States, pursuant to a request from Captain of the Port Sector Northern New England on July 8, 2017, is withholding the Vessel's U.S. Customs and Border Protection ("CBP") departure clearance until the Vessel provides security as authorized by 33 USC § 1908(e).

E. The Owner, Operator, and the United States, as parties to this Agreement, desire to arrange for security to be posted to secure the performance of this Agreement and to permit CBP to issue the Vessel's departure clearance.

1

## AGREEMENT

This Agreement in its entirety constitutes surety satisfactory to the Secretary of Homeland Security ("Secretary") per 33 U.S.C. § 1908(e). As consideration for surety satisfactory to the Secretary for the release of the Vessel, the undersigned parties agree as follows:

1. Owner and Operator shall <u>jointly</u> post a Surety Bond in the amount of $1,750,000 United States Dollars (USD), as security for any adjudicated potential fines or penalties for Alleged Violations and to ensure performance of this Agreement. The Surety Bond shall be posted prior to the Vessel's departure from Portland, ME, and delivered to the U. S. Coast Guard, to the attention of Commander Fazio (dl), First Coast Guard District, 408 Atlantic Avenue, Boston, MA, 02122. When the U.S. Coast Guard receives the Surety Bond, and upon receipt of an executed copy of this document, the U.S. Coast Guard will promptly notify U. S. Customs that departure clearance of the Vessel may be granted as it relates to the violations alleged in the U. S. Coast Guard's letter to the Master of the Vessel dated July 8, 2017. The Surety Bond shall be paid out to the United States as provided for in the Surety Bond and as follows:

    (a)   Subject to any right of appeal, if a penalty is assessed by a United States court or authorized administrative body in a civil, criminal, or administrative action against the vessel *in rem* or its Owner or Operator *in personam* for the Alleged Violations or violations arising from or relating to the facts of the Alleged Violations, then the net amount of such penalty (or the full amount of the Surety Bond, excluding any interest on that amount, if the penalty is in excess of the Surety Bond) shall be paid to the United States. The balance amount of the Surety Bond and any interest earned thereon

remaining in excess of the amount paid to the United States shall be remitted to Owner and/or Operator.

(b) If judgment is entered in favor of Owner and Operator in a criminal action, the balance of the amount of the Surety Bond and any interest earned thereon shall be paid to Owner and/or Operator.

(c) If either the Owner and/or Operator fail to appear as required by this Agreement, or fail to waive objections to jurisdiction as required by this Agreement, then the amount of the Surety Bond, excluding any interest earned thereon, shall be paid to the United States.

(d) If a United States court renders a finding that either the Owner or Operator failed to pay or provide lodging for the crew as required by paragraph 3 of this Agreement, then the amount of the Surety Bond and any interest earned thereon shall be payable to the crew or their agents as directed by the court.

(e) If a United States court renders a finding that either the Owner or Operator materially breached other obligation contained in this Agreement, then the amount of the Surety Bond and any interest earned thereon shall be payable to the United States in reimbursement for actual expenses required for performance of the aforementioned obligations by the United States as directed by the court.

(f) If a full or partial plea agreement or compromise is reached in a civil, criminal, or administrative action, then payment shall be made in accordance with joint written instructions from the United States and Owner and Operator.

Any dispute between the United States and Owner or Operator regarding payment under this paragraph shall be submitted to the United States District Court for the District of

Maine. In any such dispute wherein one party claims a breach of the terms and conditions herein, the party asserting that there has been a breach of the Agreement shall bear the burden of proof.

2. Owner and Operator agree to facilitate interviews of any officer or crewmember employed by Owner or Operator at the time such a request is made by the United States. Owner and Operator agree to cooperate with the United States to arrange for testimony of such employed officer or crewmember before a Grand Jury or other judicial or administrative proceeding arising from the Alleged Violations. Owner and Operator agree to assist the United States in effecting proper service of process with respect to any Alleged Violation of the Owner, Operator, Person in Charge, officer or crewmember, for any employed officer or crewmember who is not in the United States at the time the subpoena is issued, in a manner consistent with U.S. laws and the laws of the foreign country where the individuals are located. In addition, the Owner and Operator will encourage these officers and crewmembers to cooperate with the United States in carrying out its investigation and in appearing for their scheduled testimony. Owner and Operator will act in good faith in carrying out these obligations. No disciplinary measures or legal proceedings or any other retaliatory actions will be instituted by the Owner and/or Operator or any agent of the Owner and/or Operator of the Vessel against any officer or crewmember or other employee as a result of the officer's or crewmember's or other employee's cooperation with the United States. No efforts will be undertaken to retaliate against the officers or crewmembers or other employees for their cooperation, either now or at any time in the future, and the Owner and Operator will make reasonable efforts to prevent third parties from the doing the same. The United

States agrees that it will provide reasonable notice of its need for these officers and crewmembers to be present so that Owner and Operator may arrange for substitute officers and crewmembers.

3. At the request of the U.S. Coast Guard acting on behalf of the United States, the ships officer and crewmembers listed within subpart (a) of this paragraph ("Paragraph 3") shall remain within the jurisdiction of the U.S. District Court – District of Maine pursuant to the terms set forth within the below subparts.

(a) The ship's officers and crewmembers pertaining to this paragraph are:

1) DEMACK, Peter - Master;

2) SHAROV, Iurii – Chief Engineer;

3) PULAK, Martin – Second Assistant Engineer;

4) HORNOF, Jaroslav – Third Assistant Engineer;

5) SEMANEH, Abebe – Engineer Cadet;

6) ZAKHARCENKO, Oleksandr – Electrician;

7) ZAK, Lukas – Wiper;

8) NEVIDAL, JOSEF – Fitter;

9) KORDIC, Damir – Oiler.

(b) The Owner and Operator agree to provide reasonable lodging, a meal allowance of $50.00 USD per day, and health care coverage to the aforementioned ship's officers and crewmembers of the Vessel while in the United States, regardless of the current employment status of the aforementioned ship's officers and crewmembers, until the United States, through its attorney responsible for the pending criminal investigation, advises that their presence is no longer necessary. Provided that the lodging secured for

9S
MA

the aforementioned ship's officers and crewmembers includes breakfast and/or functional kitchen facilities, the required meal allowance will be reduced to $35 USD per day. Owner and Operator agree to promptly notify the United States, through its attorney responsible for the pending criminal investigation, as well as Lieutenant J.D. Lavallee, of the name, address and telephone number of the hotel where each ship's officer and crewmember resides. Owner and Operator agree to provide notice of this agreement and its provisions to all affected ship's officers and crewmembers.

(c) Owner and Operator agree that the Vessel shall not depart forthwith for the remainder of its voyage until the aforementioned ship's officers and crewmembers of the Vessel have been granted immigration status necessary to enable them to remain in the United States commensurate with the duration of this Agreement. Owner and Operator agree that no such ship's officer or crewmember will be allowed to remain aboard the Vessel when it departs from the United States unless the United States, through its attorney responsible for the pending criminal investigation, advises Owner and/or Operator that the ship's officer or crewmember may leave the United States aboard the Vessel. Owner and Operator agree to continue to employ and to pay total wages in a timely manner and in a manner consistent with any applicable collective bargaining agreements or employee contracts until the United States, through its attorney responsible for the pending criminal investigation, advises that their presence is no longer necessary, except that the Owner and Operator will not be required to employ or pay wages for any ship's officer or crewmember listed in subpart (a) who is convicted of a crime arising from and related to the facts of the Alleged Violations. In addition, in the event that any ship's officer or crewmember in subpart (a) had his employee contract expire during the

Vessel's current port visit in Portland, ME, the owner and operator shall pay total wages in a timely manner and in manner consistent with any applicable collective bargaining agreement and employee contracts which existed prior to the Vessel's said port visit. "Total wages" as used in this paragraph includes the total wage the crewmember contracted for and anticipated, including guaranteed overtime. Additionally, the payment of wages shall continue even in the event that the normal employment contract for the employee may otherwise or ordinarily expire. After being advised by the United States, through its attorney responsible for the pending criminal investigation, that the presence of an aforementioned ship's officer or crewmember is no longer necessary, Owner and Operator will repatriate the ship's officer or crewmember to his home country, or to another port so that the ship's officer or crewmember may complete his employment contract, unless otherwise agreed or ordered by a court of competent jurisdiction.

(d) The requirements of the Owner and Operator set forth in the entirety of Paragraph 3 and its subparts shall continue until all related cases are declined, there is sentencing, judgment, and any resulting repatriations, or depositions are taken in accordance with Rules of Criminal Procedures, Rule 15, after an indictments or information have been returned. Owner and Operator will act in good faith in carrying out these obligations.

4. The United States and the Owner and Operator agree to take reasonable measures to expedite the investigation of the Alleged Violations and any subsequent proceedings.

5. The United States agrees that the Owner and Operator cannot exercise complete control over the ship's officers and crewmembers of the Vessel and therefore

Owner's and Operator's obligations in respect to ensuring any ship's officer or crewmember of the Vessel remains within or returns to the jurisdictions of the U. S. District Court - District of Maine, shall be limited to:

(a) requesting such ship's officers and crewmembers of the Vessel to surrender their passports to the Owner or Operator for safe keeping;

(b) requesting such ship's officers and crewmembers of the Vessel to remain within the jurisdictions of the U. S. District Court - District of Maine,

(c) providing such ship's officers and crewmembers of the Vessel with reasonable lodging, a meal allowance and health care coverage as provided in this Agreement; and

(d) providing such ship's officers and crewmembers of the Vessel with reasonable transportation within the jurisdictions of the U. S. District Court - District of Maine, including transportation to all meetings with their attorneys and law enforcement personnel.

If such a ship's officer or crewmember refuses to surrender his passport to Owner or Operator, then Owner and Operator shall immediately provide actual notice to the United States, through both its attorney responsible for the pending criminal investigation as well as Lieutenant J.D. Lavallee. If at any time any such ship's officer or crewmember requests the return of his passport by Owner and/or Operator, then Owner and/or Operator shall provide actual notice to the United States, through both its attorney responsible for the pending criminal investigation, as well as Lieutenant J.D. Lavallee, at least 72 hours before returning the passport to the ship's officer or crewmember. Regarding such ship's officers and crewmembers of the Vessel, Owner and Operator



shall have no further responsibility or obligations to the United States other than those stated herein, except as otherwise provided by law or regulation.

6. The obligations of the Owner and Operator set forth herein with respect to the specifically aforementioned ship's officers and crewmembers of the Vessel are subject to all rights of each ship's officer and crewmember as may be asserted by the ship's officer or crewmember or by any attorney working on his behalf.

7. Nothing in this Agreement is to be deemed as binding on non-parties to this Agreement. In particular, for each ship's officer and crewmember who may be served with a federal Grand Jury, deposition, or trial subpoena or material witness warrant and who is required to remain within the jurisdictions of the U. S. District Court - of Maine, their rights pursuant to 18 U.S.C. § 3144, F.R.Crim.P. Rule 15 and other federal laws are specifically preserved.

8. The United States has previously provided an inventory of all documents, copies of documents, or items seized from the Vessel. Owner and Operator agree to stipulate to the authenticity of documents and things listed on the inventory provided by the United States after the Owner and Operator, through counsel, have had a reasonable opportunity to review the inventory and compare it against actual documents or things referenced in the inventory. The United States agrees that by so stipulating, Owner and Operator do not waive any objections they may have to the relevance or admissibility of the documents into evidence in any proceeding, or to the manner in which they were seized and removed, or to any other matter concerning the documents or things except their authenticity at the time of their seizure. Owner and Operator also agree to accept service of and comply with any and all subpoenas for records issued by the government and, upon request, provide a competent custodian of records at any court proceeding, to include

grand jury, motions, and trial, to testify as to the authenticity of any records produced pursuant to the subpoena and steps taken to comply with said subpoena. The Owner and Operator will pay for the travel to the United States of the relevant records custodian(s) and instruct those records custodians to cooperate with the United States in carrying out its investigation and will act in good faith in carrying out this obligation.

9. Owner, Operator and the United States agree that the criminal and civil penalty claims of the United States against the Vessel *in rem* shall attach to the Vessel release's security as provided pursuant to the Federal Rules of Civil Procedure, Admiralty, Maritime Claims, Supplemental Rule E(5). In consideration of the Surety Bond, the United States agrees not to cause the arrest of the Vessel, nor the arrest, seizure or attachment of any other vessel owned, operated, managed, or chartered by the Owner or Operator for the Alleged Violations, and not to withhold CBP departure clearance of the Vessel, or any other vessel under the same management and control of the Owner and Operator, on account of the Alleged Violations in the U.S. Coast Guard's letter to the Master of the Vessel dated July 8, 2017.

10. This Agreement is to be binding whether the Vessel be in port or not in port, lost or not lost, and regardless of its condition, and is given without prejudice as to all rights or defenses which the Vessel, Owner and/or Operator may have, none of which is to be regarded as waived, except the Owner and Operator agree to waive any objections to *in personam* jurisdiction over them, and *in rem* jurisdiction over the Vessel, with respect to the potential claims of the United States described above, in the United States court which hears the criminal action.

11. Owner and Operator authorize George M. Chalos, Esq., as attorney for Owner/Operator for this Agreement, to accept service of any correspondence or legal papers relating to the Alleged Violations on behalf of the Vessel, Owner and Operator via e-mail at: gmc@chaloslaw.com or at his New York office at 55 Hamilton Avenue, Oyster Bay, New York 11771. The Owner and Operator agree to enter an appearance in any criminal action brought against them in a United States court concerning the Alleged Violations, or in any civil penalty

action brought against them in any other forum, and to defend the Vessel from any *in rem* criminal claim asserted against it.

12.   The United States and Owner and Operator enter into this Agreement without prejudice as to all rights or defenses, none of which is to be regarded as waived except as expressly set forth above.

13.   This Agreement may be signed in duplicate originals.

14.   This Agreement remains in effect until all criminal proceedings arising from and related to the facts on this case have been completed or the surety bond is returned by the United States.

Dated:  13 July 2017

Reederei MS Marguerita Gmbh & Co. Geschlossene Investment-KG
As Owner, MV MARGUERITA

By: _____
George M. Chalos
Chalos & Co, P.C.

As attorney in fact per authority received 13 July 2017

Dated:  13 July 2017

MST Mineralien Schiffahrt Spedition und Transport GmbH
As Operator, MV MARGUERITA

By: _____
George M. Chalos
Chalos & Co, P.C.

As attorney in fact per authority received 13 July 2017

Dated:  13 July 2017

United States of America

By: _____
Michael A. Fazio
Commander, U.S. Coast Guard
First Coast Guard District (dl)

11

